Kate Juvinall (SBN 315659)
Andrew J. Weissler (SBN 343145)
HUSCH BLACKWELL LLP
355 South Grand Avenue, Suite 2850
Los Angeles, CA 90071
Telephone: (213) 337.6550
Facsimile: (213) 337.6551
kate.juvinall@huschblackwell.com
aj.weissler@huschblackwell.com

*Attorney for Transdev Alternative Services, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL STEIN, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSDEV ALTERNATIVE SERVICES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL**<br><br>State Complaint filed: June 8, 2026<br><br>Removal Date: July 31, 2026 |

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Transdev Alternative Services, Inc. ("Defendant" or "TAS") hereby removes by and through its undersigned counsel, the above-captioned civil action filed by Plaintiff Daniel Stein ("Plaintiff") and all claims and causes of action therein (the "Action"), from the Superior Court of the State of California, County of Los Angeles ("State Court"), to the United States District Court for the Central District of California ("Court"), pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of 2005 ("CAFA")), 1441, 1446, and 1453. As the requisite "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), TAS states as follows:

## I. STATEMENT OF JURISDICTION AND VENUE

1. CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (1) the number of putative class members is 100 or greater; (2) the aggregate amount placed in controversy by the Complaint exceeds $5 million, excluding interest and costs; and (3) any member of the class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453. The Supreme Court has explained that CAFA's provisions are to be read broadly and that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing S. Rep. No. 109-14, at 43 (2005)).

2. Venue for this action lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1441 because this is the judicial district where the action was filed, and where the case is pending.

## II. PROCEDURAL BACKGROUND

3. On June 8, 2026, Plaintiff filed a civil complaint against TAS in the Superior Court of the State of California in and for the County of Los Angeles, entitled *Daniel Stein, individually, and on behalf of all others similarly situated, v. Transdev*

*Alternative Services, Inc.*, Case No. 26STCV18086, alleging the following three causes of action: (1) Unpaid Sick Pay Wages; (2) Unpaid PTO Wages; and (3) Unfair Business Practices. *See* attached **Exhibit A**.

4. On the same day, Plaintiff filed a Civil Case Cover Sheet and Civil Case Cover Sheet Addendum with the Clerk of the State Court. *See* attached **Exhibits B-C**.

5. On the same day, the Clerk of the State Court issued a Summons. *See* attached **Exhibit D**.

6. On the same day, the Court issued an Alternative Dispute Resolution Packet. *See* attached **Exhibit E**.

7. On the same day, the State Court issued a Notice of Case Assignment. *See* attached **Exhibit F**.

8. On June 12, 2026, the Court issued a Minute Order Scheduling Initial Status Conference, Initial Status Conference Order, and a Clerks Certificate of Service. *See* attached **Exhibits G-I**.

9. On July 2, 2026, TAS executed and served the Notice of Acknowledgement and Receipt on Plaintiff's counsel, effecting service of the Complaint on that date. Plaintiff's counsel filed the NOA and Proof of Service on July 8, 2026. *See* attached **Exhibits J & K**.

10. The State Court's docket is attached as **Exhibit L**.

11. On July 30, 2026, TAS filed an Answer to Plaintiff's Complaint in State Court. *See* attached **Exhibit M**.

## III. <u>THIS REMOVAL IS TIMELY</u>

12. Under 28 U.S.C. § 1446(b), a "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise" of the initial pleading or summons. The 30-day removal window begins once service occurs. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354 (1999).

13. On July 2, 2026, TAS executed and served the Notice of Acknowledgement and Receipt on Plaintiff's counsel, effecting service of the Complaint on that date. Under 28 U.S.C. § 1446(b), this Notice of Removal is timely because it was filed within 30 days of service of the Summons and Complaint on TAS.

14. TAS has not made a prior application for this or similar relief.

15. As required by 28 U.S.C. § 1446(d), TAS will serve this Notice of Removal on Plaintiff.

16. As required, TAS will also promptly file a Notice of Filing a Notice of Removal with the Clerk of the California Superior Court, County of Los Angeles, which will advise the State Court of the removal.

## IV. JURISDICTION EXISTS UNDER CAFA

17. CAFA gives United States District Courts original jurisdiction over civil class action lawsuits in which at least one member of the putative class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2), so long as the proposed class numbers 100 or more, 28 U.S.C.§ 1332(d)(5)(B). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. While there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. §§ 1332(d)(3)-(5), no such exceptions apply here.

### A. The Aggregate Number of Putative Class Members is 100 or More

18. Plaintiff seeks to certify two classes:

> All non-exempt employees of Defendants in the State of California who earned paid time off ("PTO") during their employment and earned non-discretionary remuneration, including without limitation, shift differentials and premiums, and whose employment ended at any time since June 8, 2022 (the "PTO Class"); and

> All non-exempt employees of Defendants in the State of California who earned non-discretionary remuneration, including without limitation, shift differentials and premiums, and sick pay during the same period, and whose employment ended at any time between June 8, 2023,

> through the present, but excluding any time periods barred by the settlement in *Gunawan v. Transdev Alternative Services, Inc.*, San Francisco County Case No.CGC-22-599234 (the "Sick Pay Class").

*See* Complaint, ¶ 16(a)-(b).

19. The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-1205 (E.D. Cal. 2008) (internal quotations omitted).

20. If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100%, unless the plaintiff specifically alleges otherwise. *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007)(citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to all putative class members reasonable.") (emphasis added); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, ***or assuming that each member of the class will have experienced some type of violation***—when those assumptions are reasonable in light of the allegations in the complaint."); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate");

*Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

21. Here, Plaintiff's Complaint can reasonably be construed as asserting that all non-exempt employees employed during the relevant period (1) earned PTO and non-discretionary wages ("PTO Class"), and (2) earned sick time and non-discretionary wages during the same pay period at least once ("Sick Pay Class").

22. Plaintiff's Sick Pay Class excludes certain individuals covered by the prior *Gunawan/TAS* Settlement. However, because the PTO Class covers a longer period of time, from June 8, 2022 to present, and encompasses the same employees as the Sick Pay Class, from June 8, 2023 to present, all individuals employed and terminated by TAS from June 8, 2022 are properly included in the proposed class for purposes of this removal.

23. The proposed class is much larger than 100 individuals. TAS's records show that at least 2,256 potential class members' employment with TAS ended between June 8, 2022 and July 27, 2026. Thus, the proposed class well exceeds 100 members.

**B. <u>The Parties Have Minimal Diversity Under CAFA</u>**

24. CAFA requires minimal diversity. That is, at least one putative class member must be a citizen of a state different from any one defendant. 28 U.S.C. §1332(d)(2)(A).

25. For purposes of diversity jurisdiction, a person is a citizen of the state in which he or she is domiciled. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

26. On information and belief, Plaintiff is a citizen of and domiciled in California. Thus, at least one putative class member, the named Plaintiff, is a citizen

of California.

27. A corporation is a citizen of any state where it is incorporated and where its principal place of business is located. 28 U.S.C. § 1332(c).

28. A corporation's principal place of business is determined by the "nerve center" test, which looks to where the corporation maintains its corporate headquarters and where the corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 90-94 (2010).

29. TAS is a corporation organized under the laws of Delaware and has its principal place of business in Illinois. Thus, TAS is a citizen of Delaware and Illinois for purpose of determining diversity jurisdiction.

30. Because named Plaintiff is a citizen of a state different from at least one defendant, within the meaning of 28 U.S.C. § 1332(d)(2)(A), CAFA's diversity of citizenship requirement is satisfied in this action.

### C. The Amount in Controversy is $17,370,000.00, Well Exceeding the $5 Million Threshold

31. Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

32. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89; *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 962 (9th Cir. 2020) ("[A] removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal quotations omitted))).

33. To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on reasonable assumptions. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the

allegations of the complaint." *Arias*, 936 F.3d at 925. Further, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be [less than $5 million]." *Id.* at 927. The amount in controversy is not an assessment of a defendant's potential liability, but instead "reflects the maximum recovery the plaintiff could reasonably recover." *Id.*

34. Moreover, "in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). This Court's inquiry therefore focuses on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

35. As discussed above in Paragraphs 18-19, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100%, or that each member of the class experienced some sort of violation, unless the plaintiff specifically alleges otherwise. *See Muniz*, 2007 WL 1302504, at *4; *Wheatley*, 2019 WL 688209, at *5; *Arreola*, 2014 WL 6982571, *4; *Franke*, 2017 WL 3224656, at *2; *Jones*, 2014 WL 1607636, at *3.

36. Although the Complaint is silent as to the amount of damages sought, it is apparent from the allegations that, given the size of the putative class and the nature of the damages sought, the amount in controversy easily exceeds the jurisdictional threshold.[1]

---

[1] The unpaid wages associated with Plaintiff's sick pay and PTO claims (Causes of Action One and Two) are omitted from the calculations, but can be included if needed to meet the amount in controversy requirement.

***Waiting Time Penalties Claim***

37. Plaintiff's First and Second Causes of Action alleges that TAS failed to pay terminated employees all wages due upon discharge. *See* Complaint, ¶¶ 26, 30, 35.

38. Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay, if the employee is owed but not timely paid even a single penny following the end of the employment relationship. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.").

39. The statute of limitations for waiting time penalties under California Labor Code § 203 is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010) ("[W]e conclude there is but one reasonable construction: section 203(b) contains a single, three-year limitations period governing all actions for section 203 penalties irrespective of whether an employee's claim for penalties is accompanied by a claim for unpaid final wages."). Accordingly, the proposed class period is from **June 8, 2023, until the present**.

40. Here, approximately 1,930 potential class members' employment with TAS ended between June 8, 2023 and the present. Based on an average hourly rate of $30, the average daily wage of the putative class members is $240 ($30 x 8 hours), the total penalty with respect to each proposed class member is $7,200 ($240 x 30 days). Accordingly, the total amount placed in controversy by this claim is at least **$13,896,000.00** ($7,200 x 1,930 terminated employees).

***Attorney's Fees***

41. The Court should take into account the attorneys' fees Plaintiff seeks in determining the amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

42. Attorneys' fees in awards in California wage-hour class actions may total hundreds of thousands of dollars and exceed one million dollars. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier).

43. Multiple courts have held that under CAFA it is appropriate to apply at least a 25% benchmark for fees. *See, e.g., Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012) ("[T]he Court notes that it is well established that the Ninth Circuit has established 25% of the common fund as a benchmark award for attorney fees. Thus, it is not unreasonable for [Defendant] to rely on this estimate using the common fund method under the circumstances here." (quotation marks and citations omitted)); *Heejin Lim v. Helio, LLC*, 2012 WL 359304, at *3 (C.D. Cal. Feb. 2, 2012) ("[T]he Court notes that Plaintiff seeks attorney's fees, which are properly included in the amount in controversy at 25% of the potential damage award." (citations omitted)).

44. Here, even assuming the amount in controversy is not more than the **$13,896,000.00** identified in Paragraph 39 above, using the 25% common fund benchmark, the amount in controversy with respect to attorneys' fees is at least **$3,474,000.00** for a total amount in controversy on these claims alone of **$17,370,000.00**, exclusive of interest and costs.

45. Based on the foregoing, under CAFA, Plaintiff's claims for damages, penalties, attorneys' fees, and other monetary relief exceeds the $5 million jurisdictional limit of this Court, as required by 28 U.S.C. § 1332(d). As a result, although TAS denies Plaintiff's claims of wrongdoing, denies that a class can be certified, and denies the requests for relief, Plaintiff's complaint asserts an amount in controversy in excess of $5 million, exclusive of costs and interest.

46. By removing this matter, TAS does not waive, and, to the contrary,

reserves any rights it may have, including, without limitation, all available arguments and defenses. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

## V. <u>CONCLUSION</u>

Based on the foregoing, this Action is subject to the original jurisdiction of the Court, under 28 U.S.C. § 1332, and this Action may be removed to this Court pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446. TAS respectfully requests that the matter filed in the Superior Court of the State of California in and for the County of Los Angeles and captioned *Daniel Stein v. Transdev Alternative Services, Inc.*, Case No. 26STCV18086, be removed to the United States District Court for the Central District of California.

DATED: July 31, 2026 HUSCH BLACKWELL LLP

By: */s/ Kate Juvinall*
Andrew J. Weissler
Kate Juvinall
*Attorneys for Transdev Alternative Services, Inc.*